

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

-5/15

Hon. N. B. D. Bailey
District Attorney
Center, Texas

Opinion No. O-6490
Re: Can activities of Jehovah's Witnesses be restrained on the theory that their methods and activities constitute a nuisance?

Dear Mr. Bailey:

We have your letter of March 22, 1945, requesting an opinion from this department, which reads as follows:

"The sheriff of Panola County, one of the counties of my district, has requested that I bring some sort of proceeding, injunction or otherwise, to restrain the Jehovah Witnesses from selling and offering for sale, on the public streets of Carthage, the literature of that faith commonly known as The Watchtower.

"It appears that the sale of its literature and the accompanying application of their religious doctrine to the present war is provocative of difficulties and disturbances of the peace. The city government of Carthage has no ordinances calculated to prevent the sale of their literature and the holding of their gatherings therein, and I have been called upon to work out some solution abating their activities.

"Apparently the faith preached by the Jehovah Witnesses is a religion within the meaning of the Federal Constitution, but the dissemination of their faith must be kept within due bounds, having regard to the rights of the Federal government, state and municipal government to make reasonable regulations for the health, safety and welfare of its citizens, and that their activities, when carried to the extent of provoking disturbances and riots in a community, may

COPY

be kept within due bounds and subject to reasonable regulations. Therefore, may I ask whether or not their activities may be restrained, either by the city government of Carthage or by any proceeding in the courts on the theory that their methods and activities constitute a nuisance.

"Disloyalty measures passed by our Legislature have been held invalid. Ex parte Meckel, 220 S. W. 81, Schellenger v. State, 222 S. W. 246. The Federal Courts have had the exact problem before them, but no library in my town has the reports. 42 F. Supp. 577, is a case styled Borchert v. City of Ranger."

We do not think that the activities of Jehovah's Witnesses may be restrained either by the city government of Carthage or by any proceedings in the courts on the theory that their methods and activities constitute a nuisance.

In the case of Borchert vs. City of Ranger, Texas, 42 Fed. Supp. 577, the Jehovah's Witnesses obtained an injunction in Federal Court against the cities of Ranger, Dublin, Comanche and Coleman, which prohibited these cities from restraining the activities of Jehovah's Witnesses under ordinances then in force in the respective cities. Federal Judge James C. Wilson undertakes in that case to set out what Jehovah's Witnesses can and cannot do under the Federal Constitution. He quotes from the case of Schneider vs. State of New Jersey, 308 U. S. 147, 60 Sup. Ct. 146, 150, 84 L. Ed. 145, as follows:

"Although a municipality may enact regulations in the interest of the public safety, health, welfare or convenience, these may not abridge the individual liberties secured by the Constitution to those who wish to speak, write, print or circulate information or opinion.

"Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated. So long as legislation to this end does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using the streets. For example, a person could

not exercise this liberty by taking his stand in the middle of a crowded street, contrary to traffic regulations, and maintain his position to the stoppage of all traffic; a group of distributors could not insist upon a constitutional right to form a cordon across the street and to allow no pedestrian to pass who did not accept a tendered leaflet; nor does the guarantee of freedom of speech or of the press deprive a municipality of power to enact regulations against throwing literature broadcast in the streets. Prohibition of such conduct would not abridge the constitutional liberty since such activity bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion. ***

"In every case, therefore, where legislative abridgement of the rights is asserted, the courts should be astute to examine the effect of the challenged legislation. Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities; but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions. And so, as cases arise, the delicate and difficult task falls upon the courts to weigh the circumstances and to appraise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of the rights. . . ."

Since the Schneider case, the Supreme Court of the United States has passed on this question numerous times in connection with ordinances which were enacted to restrain the activities of Jehovah's Witnesses.

The Supreme Court of the United States has held that an ordinance of the city of Dallas which prohibited the distribution of handbills on the streets was unconstitutional as applied to Jehovah's Witnesses. Jamison vs. Texas, 318 U. S. 413, 63 Sup. Ct. 669, 87 L. Ed. 869. That same Court held in Largent vs. Texas 318 U. S. 418, 63 Supreme Court 667, 87 L. Ed. 873, that an ordinance

of the city of Paris, Texas, which makes it unlawful for any person to solicit orders or sell books, wares or merchandise within the residence portion of Paris, without first filing an application and obtaining a permit, which would be issued only if after investigation the Mayor deemed it proper and advisable, is unconstitutional as applied to Jehovah's Witnesses.

In the recent case of Martin vs. Struthers, 319 U. S. 141, 63 Supreme Court 862, 87 L. Ed. 1316, the Supreme Court held unconstitutional as applied to Jehovah's Witnesses an ordinance of the city of Struthers, Ohio, which reads, in part, as follows:

> ". . . It is unlawful for any person distributing handbills, circulars or other advertisements to ring the door bell, sound the door knocker, or otherwise summon the inmate or inmates of any residence to the door for the purpose of receiving such handbills, circulars or other advertisements they or any person with them may be distributing. . . ."

The Supreme Court of the United States has held in one case that Jehovah's Witnesses may be prosecuted and convicted under a statute of the State of New Hampshire, which reads as follows:

> "No person shall address any offensive, derisive or annoying words to any other person who is lawfully in the street or in the public place, nor call him by any offensive or derisive name. . . ." Chaplinsky vs. New Hampshire, 315 U. S. 568, 62 Supreme Court 766, 86 L. Ed. 1031.

The complaint in that case charged:

> "The complaint charged that appellant 'with force and arms, in a certain public place in said city of Rochester, to wit, on the public sidewalk on the easterly side of Wakefield Street, near unto the entrance of the City Hall, did unlawfully repeat, the words following, addressed to the complainant, that is to say, 'You are a God damned racketeer' and 'a damned Facist and the whole government of Rochester are Fascists or agents of Facists' the same being offensive, derisive and annoying words and names. . . ."

We might add that the fact that some of the activities of Jehovah's Witnesses may appear to be unpatriotic does not destroy the protection which they are otherwise entitled to under the Constitution. In our Opinion No. 0-2915, which was written December 13, 1940, we held that a teacher may be discharged for refusal to salute the flag or for refusal to teach pupils to salute the flag, or have proper reverence for it. We predicated this holding on the case of Minersville School District vs. Gobitis, 310 U. S. 586, 60 Sup. Ct. 1010, 84 L. Ed. 1375. At the next term of Court, the Supreme Court of the United States overruled the Gobitis decision and vacated the judgment there entered by its decision in West Virginia State Board of Education vs. Barnette, 319 U. S. 643, 63 Sup. Ct. 1187, 87 L. Ed. 1628. We therefore overrule our Opinion No. 0-2915. Also, the Supreme Court held during the October Term 1941 that Jehovah's Witnesses were subject to ordinances prescribing peddlers' licenses, but at the next term of court it overruled this decision holding that they were not subject to any kind of license tax. Murdock vs. Penn. 319 U. S. 105, 63 Sup. Ct. 870, 891, 87 L. Ed. 1292, 146 A.L.R. 81. Douglas vs. Jeannette, 319 U. S. 157, 63 Sup. Ct. 877, 882, 87 L. Ed. 1324.

Trusting that the foregoing answers your inquiry, we are

Yours very truly,

APPROVED [illegible] 1945

ATTORNEY GENERAL OF TEXAS

By Fagan Dickson
Fagan Dickson
Assistant

FD:rt